906 F.2d 708
 285 U.S.App.D.C. 14
 OKLAHOMA NATURAL GAS COMPANY, A DIVISION OF ONEOK INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Williams Natural Gas Company, Ladd Gas Marketing, Inc.,
PowerSmith Cogeneration Project, Limited
Partnership, Intervenors.
 No. 89-1376.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 20, 1990.
Decided June 22, 1990.
 
 William I. Harkaway, with whom C. Burnett Dunn, Gerald L. Hilsher, Brad D. Fuller and John L. Arrington, Jr. were on the brief, for petitioner.
 Catherine C. Cook, Atty., F.E.R.C., with whom Jerome M. Feit, Sol., was on the brief, for respondent. Katherine Waldbauer, Atty., F.E.R.C., also entered an appearance, for respondent.
 Harold L. Talisman, Megan A. Sperling and John H. Cary for Williams Natural Gas Co., Douglas E. Nordlinger and John N. Estes for PowerSmith Cogeneration Project, Ltd. Partnership, and James L. Trump and Michael T. Mishkin for Ladd Gas Marketing, Inc., were on the joint brief, for intervenors. Maria M. Jackson, for Williams Natural Gas Co., also entered an appearance, for intervenors.
 Before RUTH B. GINSBURG, SILBERMAN and THOMAS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 Oklahoma Natural Gas Company ("ONG") petitions for review of an order of the Federal Energy Regulatory Commission ("FERC") authorizing Williams Natural Gas Company ("Williams") to construct and operate a 12.4 mile pipeline connecting Williams' interstate pipeline to PowerSmith Cogeneration Project ("PowerSmith") in Oklahoma City, Oklahoma. See Williams Natural Gas Co., No. CP89-93-001 (F.E.R.C. Feb. 16, 1989) (order issuing certificate) ("Order "); Williams Natural Gas Co., No. CP-93-001 (F.E.R.C. May 31, 1989) (order denying rehearing and clarifying prior order) ("Rehearing Order "). ONG, the local distribution company, aggrieved by the loss of a customer within its franchise area, disputes the Commission's order on various procedural and administrative law grounds--none of which appears to have any merit.[1] But ONG also challenges FERC's assertion of jurisdiction over the pipeline, and we do not think the Commission's terse explanation of the basis for its exercise of jurisdiction is adequate to permit judicial review of what seems an important question. We therefore remand to the Commission.
 
 I.
 
 2
 Williams operates a 16-inch certificated interstate pipeline called the "cement pipeline" which takes gas from producers in western Oklahoma and transports it in interstate commerce. PowerSmith is a cogeneration plant under construction in Oklahoma City, some 12 miles away from the cement pipeline. Ladd Gas Marketing, Inc. ("Ladd") has agreed to sell PowerSmith all its gas requirements for fifteen years, and Ladd, PowerSmith and Williams have entered into a "transportation" agreement whereby Williams will deliver gas from its cement pipeline to PowerSmith--which requires the 12.4 mile lateral pipeline extension, the certification of which is the subject of this appeal. Ladd will compensate Williams by delivering gas to its pipeline at a number of designated receipt points downstream of the new extension, including locations in Kansas and Wyoming. The Commission describes this arrangement as a form of transportation called a "backhaul," as if Williams were taking the gas that Ladd puts in the cement pipeline downstream of the extension and transporting it upstream to PowerSmith, which, of course, is not what actually happens.
 
 
 3
 The Commission's jurisdiction over this transaction depends on the three-party arrangement being regarded as transportation, since the sale from Ladd to PowerSmith, even if viewed as interstate in character, would not itself confer jurisdiction on the Commission under section 1(b) of the Natural Gas Act ("NGA"), which provides only for FERC regulation of "the sale in interstate commerce of natural gas for resale ...." See 15 U.S.C. Sec. 717(b) (emphasis added). Under section 1(b), FERC may also exercise jurisdiction over the transportation of natural gas in interstate commerce. Id. Before the Commission, ONG challenged federal jurisdiction on three grounds: (1) The proposed facility is properly described as "local distribution of natural gas" and therefore exempt under the Act, see id.; (2) alternatively the proposed lateral will be connected to "gathering facilities" and is therefore exempt from Commission jurisdiction under section 1(b) of the NGA, 15 U.S.C. Sec. 717(b); and, (3) finally, on the most basic ground, the transaction for which the pipeline is proposed is not transportation in "interstate commerce" under the Act, which defines that term to mean "commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof...." 15 U.S.C. Sec. 717a(7). ONG argued that, since no molecule of gas that would be transported to PowerSmith could possibly cross state lines--gas would be gathered from producers in Oklahoma, transported on the cement pipeline only in Oklahoma, and then carried from the cement pipeline through the lateral to PowerSmith in Oklahoma City--the lateral pipeline could not fall within the Commission's jurisdiction. The Commission rejected all three arguments, and ONG renews them before us, albeit not until page 33 of its opening brief.
 
 II.
 
 4
 ONG's argument that the proposed line is exempt from Commission jurisdiction because it is a "local distribution" facility was rejected by the Commission because that term connotes a network of small local lines used to transmit gas from a large interstate pipeline to individual consumers spread out in a local geographic area--not a high-pressure line connecting an interstate pipeline to a single end-user. See Order at 7-8. We have just recently affirmed that statutory interpretation. "Distribution conjures up receiving a large quantity of some good and parcelling it out among many takers." Public Util. Comm'n of California v. FERC, 900 F.2d 269, 279 (D.C.Cir. Apr. 3, 1990), and, therefore, we reject ONG's challenge to the Commission's jurisdiction on this ground.
 
 
 5
 The second argument--that the cement pipeline itself is a "gathering facility" exempt under the statute and therefore that the lateral is similarly exempt--is also easily rejected. The Commission reasoned that the cement pipeline "is clearly part of [Williams'] integrated pipeline system and, as such, does not qualify as a gathering facility." Order at 7. And on rehearing, the Commission noted that the cement pipeline had been certificated as an interstate facility within its jurisdiction, see Cities Serv. Gas Co., 6 F.P.C. 270 (1947), and had not been abandoned. See Rehearing Order at 5. So the Commission had determined sometime ago that the cement pipeline was covered under the statute. ONG claims, nevertheless, that FERC is obliged to reconsider now whether the cement pipeline is a gathering facility. But we do not see why this is so, and, in any event, since it is uncontested that the pipeline is still used for the transmission of gas in interstate commerce, it apparently cannot be exempt as a gathering facility. See Public Util. Comm'n of California v. FERC, slip op. at 14.
 
 
 6
 A good deal more troublesome, however, is the Commission's treatment of ONG's basic challenge, that the proposed lateral is not to be used for the transportation of gas in interstate commerce. Its decision is, to be charitable, rather skimpy on this point; indeed this is dealt with entirely in a footnote:
 
 
 7
 The fact that the molecules of gas actually delivered to PowerSmith will originate in Oklahoma does not alter our view. The transportation will be effected through the use of interstate pipeline facilities. Moreover, the transportation will be carried out by means of a backhaul arrangement that calls for gas to be delivered to [Williams] at a number of designated receipt points (some in Kansas and Wyoming) and commingled with the interstate stream of gas in [Williams'] system. We find that this is not a transaction that can be effectively regulated by the State of Oklahoma. See, e.g., Columbia Gas Transmission Corp., 10 FERC p 61,111 (1980) (certificating transportation by an interstate pipeline where the gas originated and was consumed within the same state.).
 
 
 8
 Order at 7 n. 15. We perceive two grounds (really just assertions) upon which the Commission rests its conclusion that the gas will be transported in interstate commerce. The first is that since the cement pipeline is a certificated interstate facility that carries gas destined for transportation out of Oklahoma, and the gas to be carried in the proposed facility must first flow through the cement pipeline, the proposed facility is also used for transportation in interstate commerce. Alternatively, the Commission is treating the 12.4 mile extension as part of a transportation arrangement whereby Ladd's gas to be delivered in part outside of Oklahoma is sent upstream to PowerSmith (i.e., a backhaul).
 
 
 9
 The first ground strikes us as having enormous reach; any extension connected to an interstate pipeline under this theory would itself be an interstate facility regardless of its purpose. The Commission, however, made no effort to draw this jurisdictional theory from the language or legislative history of the Act or precedent interpreting the Act. Indeed, the definition of interstate commerce in the NGA--which governs both "jurisdiction based on transportation and sales for resale--is commerce between any point in a state and any point outside thereof, or between points within the same State but through any place outside thereof...." 15 U.S.C. Sec. 717a(7) (emphasis added).[2] Since it is undisputed that the gas actually delivered to PowerSmith will never leave Oklahoma, the Commission's reasoning supporting jurisdiction is not apparent. One does not have to share some of our colleagues' strong distaste for footnotes to wonder why the Commission would bury this extraordinary jurisdictional assertion in a footnote of its order.
 
 
 10
 The Commission's counsel, in its brief before this court, relies primarily on California v. Lo-Vaca Gathering Co., 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965), for support for the Commission's jurisdictional claim, as if that case so settles the question as to make unnecessary any further Commission explanation or analysis (or even citation to the case). It is argued that Lo-Vaca holds that when gas to be shipped intrastate is mixed with gas traveling in interstate commerce, the former automatically loses its intrastate character. Lo-Vaca does not, however, stand for so broad a proposition. In that case--which involved the application of the jurisdictional term "sale in interstate commerce of natural gas for resale "[3]--El Paso purchased gas from Lo-Vaca, a gathering company in Texas, and the contract specified that the gas was to be used only by El Paso itself in its compressor plants outside Texas rather than resold (another contract with Houston Pipe Line called for gas to be used by El Paso in Texas). It was conceded, however, that the gas purchased by El Paso from Lo-Vaca would be commingled in a pipeline with other gas purchased by El Paso in Texas to be sent out-of-state for resale. Because of the commingling, some of the gas molecules purchased from Lo-Vaca would have necessarily ended up delivered for resale out-of-state. And on that basis, the Supreme Court concluded that the parties could not defeat federal jurisdiction by a contract designating certain gas coming from specific sources as maintaining a separate character once commingled with gas, the sale of which was indisputably subject to federal jurisdiction.
 
 
 11
 The distinction between that case and ours is subtle, but nevertheless troubling. We also have the commingling of gas, but since jurisdiction is asserted here on the basis of transportation in interstate commerce, not on a sale for resale, the effect of commingling is seemingly different. In the case of a sale, it cannot be determined which molecules in the pipeline serve a particular load. We can, however, determine here that no molecules transported in Williams' lateral pipeline will ever be or had ever been transported out-of-state.
 
 
 12
 FERC's brief also relies on Consolidated Oil and Gas, Inc. v. FERC, 806 F.2d 275 (D.C.Cir.1986). But like Lo-Vaca, Consolidated involved the issue whether the sale of gas from a supplier to a middleman was subject to the Commission's jurisdiction. The middleman in Consolidated, an independent gathering facility, commingled gas from several suppliers and resold some of the gas intrastate and some of it interstate. FERC asserted jurisdiction over all the sales. We affirmed, pointing out that the litigating supplier's assertion that it had agreed with the gatherer that its gas was to be used or resold only in intrastate commerce was precisely the sort of contractual arrangement that Lo-Vaca was intended to avoid: It gave the gatherer the same theoretical potential to favor some suppliers over others (by picking either federal or state regulations) through designating the destination of particular sources of gas. Id. at 278.
 
 
 13
 In Consolidated we distinguished Columbia Gas Transmission Corp., 10 F.E. R.C. p 61,111 (1980) (No. CP-77-363), a case in which FERC declined to assert jurisdiction over the sale of gas from a producer to a local distribution company ("LDC") in the same state even though the gas was transported in an interstate pipeline in which it was commingled with gas bound interstate. FERC was correct in deciding that the sale in Columbia was nonjurisdictional, we said, because that sale was directly between a Pennsylvania producer and a local distribution company that made sales solely in the same state. To be sure, we stated that "FERC had jurisdiction over the transportation of the gas from the producer to the LDC, since it occurred in an interstate pipeline, but not over the sale." Id. (emphasis in original). But the gas transported in Columbia was gas that originated from both out-of-state and in-state sources. See Columbia Gas Transmission Corp., 3 F.E.R.C. p 61,115 at 61,325 (1978) (No. CP-77-363). It was therefore impossible to determine that the gas transported to the local distribution company did not originate from an out-of-state source. As ONG stresses, all of the gas that PowerSmith will actually use originates and is physically transported and consumed in Oklahoma, so our statement in Consolidated does not control this case. Compare with Michigan Consol. Gas Co. v. FERC, 883 F.2d 117, 121 (D.C.Cir.1989) (transportation of gas was in interstate commerce because pipeline transported end-user's gas across state lines).
 
 
 14
 The second basis for FERC's assertion that the proposed pipeline will transport gas in interstate commerce is similarly obscure. Merely labeling this entire transaction as a "backhaul," which is for certain purposes defined as transportation by the Commission, see 18 C.F.R. Sec. 284.1, does not necessarily meet the statutory definition. In fact, the arrangement appears to be a form of barter whereby Williams supplies gas to PowerSmith in return for Ladd's delivery of gas downstream. If so, it may well be more of a sale than transportation, or perhaps some combination of the two concepts. But, in any event, to assert jurisdiction by calling it transportation at least superficially appears to place a premium on the form rather than the substance of the transaction.[4] Does that run afoul of the Supreme Court's principle in Lo-Vaca?
 
 
 15
 Attempts have been made by one convention or another to convert a local transaction into one of interstate commerce or to make a segment of interstate commerce appear to be only intrastate. But those attempts have failed. Similarly, we conclude that when it comes to the question what gas is for "resale" the present contracts should not be able to change the jurisdictional result.
 
 
 16
 Lo-Vaca, 379 U.S. at 369, 85 S.Ct. at 488 (citations omitted) (emphasis added). The Commission does not explain the backhaul concept sufficiently to answer these questions, and, therefore, we frankly admit we do not understand the Commission any better with respect to its "backhaul" basis for asserting jurisdiction than we do its "commingling" basis.
 
 
 17
 * * * * * *
 
 
 18
 Under these circumstances, we have no alternative but to remand for further elaboration. See Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971); WAIT Radio v. FCC, 418 F.2d 1153 (1969).
 
 
 19
 It is so ordered.
 
 
 
 [1]
 ONG argues that the Commission erroneously failed to conduct a hearing to develop a number of factual issues related to its decision and that the Commission arbitrarily and capriciously failed to consider the public interest in authorizing Williams to construct and operate its pipeline. These arguments all seem to stem from an ONG policy disagreement with the Commission; i.e., that FERC should not authorize a "bypass" of ONG's monopoly franchise
 
 
 [2]
 Another statutory provision with which the Commission's first rationale seems at odds, but on which petitioner does not rely, states that the NGA "shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce ... of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State," provided that the service and facilities in question are subject to state regulation. 15 U.S.C. Sec. 717(c)
 
 
 [3]
 Commission jurisdiction over the transportation of the gas was not at issue
 
 
 [4]
 Intervenor suggested at oral argument that the backhaul concept has real economic consequences, but even so it must qualify as transportation or sale for resale to provide a basis for Commission jurisdiction